1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>THE REPUBLIC OF MALAWI<br>For an Order Pursuant to 28 U.S.C. § 1782 to<br>Conduct Discovery for Use in a Foreign<br>Proceeding | NO.<br><br>*EX PARTE* APPLICATION FOR ORDER<br>PURSUANT TO 28 U.S.C. § 1782 TO<br>CONDUCT DISCOVERY FOR USE IN A<br>FOREIGN PROCEEDING<br><br>NOTE ON MOTION CALENDAR:<br>APRIL 11, 2025 |

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

    A.      The Chimwadzulu Mine. ......................................................................... 2

    B.      Columbia Gem Assisted Nyala Mines Obtain the License. ..................... 4

    C.      Nyala Mines License for the Exclusive Rights Over the Mine. ............... 5

    D.      The Royalty Agreement Executed By Nyala Mines and Malawi. ............. 6

    E.      Unknown Quantities of Gemstones Were Mined, Exported, and Sold From Chimwadzulu. ................................................................................. 6

    F.      Columbia Gem's Possession of Highly Relevant and Material Evidence. ............. 7

    G.      History of Corruption in Malawi. ............................................................ 9

    H.      Malawi's Criminal Investigation. .......................................................... 10

    I.      The Contemplated Criminal and Civil Proceedings. ............................. 10

III.    ARGUMENT ..................................................................................................... 12

    A.      The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782. ........ 12

    B.      The Intel Factors Weigh in Favor of Granting the Application. ............. 16

    C.      Ex Parte Relief Is Proper and Justified. ................................................ 19

IV.     CONCLUSION .................................................................................................. 20

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - i

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Micro Devices, Inc. v Intel Corp.*,
    292 F.3d 664 (9th Cir. 2002) ............................................................ 14

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
    793 F.3d 1108 (9th Cir. 2015) .......................................................... 15

*Ecuador, In re Republic of*,
    2011 WL 4434816 (N.D. Cal. Sept. 23, 2011) ................................. 15

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ............................................................. 17

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
    27 F.4th 136 (2d Cir. 2022) .............................................................. 14

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................. 13, 14, 17

*In re Anahara*,
    2022 WL 783896 (N.D. Cal. Mar. 15, 2022) ................................... 19

*In re Attorney Gen. of Quebec for Jud. Assistance Pursuant to 28 U.S.C.*,
    2021 WL 5231630 (S.D. Fla. Nov. 10, 2021) .................................. 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .................................... 16

*In re Digitechnic*,
    2007 WL 1367697 (W.D. Wash. May 8, 2007) ............................... 17

*In re Ex Parte Application of Qualcomm Inc.*,
    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................... 14, 17

*In re Jin*,
    2023 WL 6240525 (W.D. Wash. Sept. 25, 2023) ............................ 19

*In re Letter Request From Crown Prosecution Serv. of United Kingdom*,
    870 F.2d 686 (D.C. Cir. 1989) ......................................................... 14

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
    539 F.2d 1216 (9th Cir. 1976) .......................................................... 19

*In re Ltr. of Req. from Supreme Ct. of Hong Kong*,
    138 F.R.D. 27 (S.D.N.Y. 1991) ....................................................... 19

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - ii

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

*In re Marano*,
  2009 WL 482649 (N.D. Cal. Feb. 25, 2009) ........................................................... 19

*In re McKillen*,
  2024 WL 3679548 (C.D. Cal. July 30, 2024) ......................................................... 13

*In re PJSC Uralkali for an Order Pursuant to 28 U.S.C.*,
  2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ...................................................... 17

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) ................................................................................... 17

*In re Republic of Ecuador*,
  2011 WL 4089189 (E.D. Cal. Sept. 13, 2011) ....................................................... 15

*In re Request For Jud. Assistance from Seoul Dist. Crim. Ct., Seoul, Korea.*,
  555 F.2d 720 (9th Cir. 1977) ................................................................................... 13

*In re Team Co., Ltd.*,
  2022 WL 4099219 (N.D. Cal. Sept. 7, 2022) ......................................................... 19

*Intel Corp. v. Adv. Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................... Passim

*IPCom GMBH & Co. KG v Apple Inc.*,
  61 F. Supp. 3d 919 (N.D. Cal. 2014) ...................................................................... 19

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) ................................................................................... 12

*Lufthansa Technik v. Panasonic Avionics Corp.*,
  2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) ................................................... 17

*Matter of Govt. of Mongolia v Itera Intl. Energy, L.L.C.*,
  2009 WL 10712603 (M.D. Fla. Nov. 10, 2009) ..................................................... 15

*Matter of Lufthansa Technick AG*,
  2019 WL 331839 (W.D. Wash. Jan. 25, 2019) ...................................................... 13

*Pott v. Icicle Seafoods, Inc.*,
  945 F. Supp. 2d 1197 (W.D. Wash. 2013) .............................................................. 14

*Republic of Ecuador v. Stratus Consulting, Inc.*,
  2013 WL 2352425 (D. Colo. May 29, 2013) .......................................................... 15

U.S.C. § 1782; *In re Sailed Tech. (Beijing) Co., Ltd.*,
  2023 WL 3568151 (W.D. Wash. May 18, 2023) ................................................... 12

**Statutes**

28 U.S.C. § 1782 ........................................................................................................ Passim
28 U.S.C. § 1782(a) ...................................................................................... 14, 16, 19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**Rules**

Federal Rule Civil Procedure 34 ................................................................................... 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

The Republic of Malawi ("**Applicant**" or "**Malawi**"), by and through its undersigned counsel, Seiden Law LLP, respectfully submits application for judicial assistance pursuant to 28 U.S.C. § 1782 to conduct discovery and obtain documentary evidence for use in contemplated foreign criminal and civil proceedings (as to this application, the "**Application**").[1]

## I. INTRODUCTION

As set forth in greater detail below and the supporting declarations, Applicant seeks evidence for use in a pending criminal investigation in Malawi. The criminal investigation stems from a large-scale scheme to defraud Malawi out of billions of dollars in royalties and taxes relating to mining of rare rubies and sapphires native only to the Chimwadzulu Mine ("**Mine**" or "**Chimwadzulu**") located in Malawi. At the epicenter of this criminal conspiracy is Nyala Mines Limited f/k/a Mineral Exploration Pty Limited ("**Nyala Mines**"), and its covert efforts to defraud Malawi, including its clandestine name change to conceal its prior identity in order to obtain an exclusive mining license from Malawi, the underreporting of its gemstone exports and wholesale earnings in order to deflate amounts owed to Malawi under the relevant license and royalty agreements, the potential manipulation of financial statements, and other evidence of criminal misconduct.

Applicant seeks highly relevant and responsive evidence from Columbia Gem House, Inc. ("**Columbia Gem**" or "**Respondent**") that will materially aid the foreign investigation and proceedings, due to Columbia Gem's exclusive partnership with Nyala Mines (and/or Nyala Mines being Columbia Gem's subsidiary). Columbia Gem is found within this District as it has its principal office location in Vancouver, Washington. Likely acting as the exclusive seller of all gemstones mined by Nyala Mines at the Mine, Columbia Gem has knowledge and documents in its possession, custody, or control that are relevant to the investigation and therefore, Malawi

---

[1] All references to "**AG Decl.**" and "**Bonanno Decl.**" are to paragraphs of the declarations of Malawi's Attorney General Thabo Chakaka-Nyirenda and MarcAnthony Bonanno, respectively, filed contemporaneously herewith. Capitalized terms not defined herein have the same meaning ascribed in the AG Decl. All emphasis is added; all internal quotations and citations are omitted.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

respectfully requests that the Court grant this Application.

## II.    FACTUAL BACKGROUND

### A.    The Chimwadzulu Mine.

The Mine is located on Chimwadzulu Hill in Ntcheu District located within the Republic of Malawi. AG Decl. ¶15. The Mine contains deposits of rubies and sapphires that do not require heat treatments that rubies and sapphires typically require – making them more valuable. AG Decl. ¶¶15, 66. The Mine was formally established in 1958 and was operated by British colonists until 1964. AG Decl. ¶18. Between 1965 and the mid-1980s, the Mine was operated by small-scale miners. *Id.* In 1988, the Malawi Development Corporation ("**MDC**"), an agency of the Applicant, began operating the Mine and did so until September 1994. *Id.*

On September 15, 1994, the Applicant issued its first private mining license for mining rubies and sapphires at Chimwadzulu to Mineral Exploration Pty Limited a/k/a Minex Limited a/k/a Minex ("**Mineral Exploration**"). Mineral Exploration's mining license bore license number ML 00045/94. AG Decl. ¶19. At the time that Mineral Exploration obtained its license, it was 85% owned by Willard International Inc. a/k/a Willard International PLC ("**Willard**"). AG Decl. ¶20. The remaining 15% was owned by MDC and Malawi.[2] *Id.* In December 2000, Agricola Resources PLC ("**Agricola**") purchased Willard's ownership interest in Mineral Exploration and thus became the new parent company of Mineral Exploration. AG Decl. ¶24.

In March 2003, David Hargreaves' (the then Chief Executive Officer of Agricola and Mineral Exploration) company, Parry Company SA, assumed Agricola's majority interest in Mineral Exploration, which was approved by Mineral Exploration's minority owners MDC and Malawi. AG Decl. ¶27. In or around August or September 2005, David Hargreaves sold Parry Company's interest in Mineral Exploration to Red Rock Resources Ltd ("**Red Rock Resources**"), which then bought out MDC's minority ownership interest in Mineral Exploration. AG Decl. ¶¶28-29. Thereafter, Red Rock Resources sold its 95% ownership interest in Mineral Exploration to

---

[2] The exact ownership interest respectively held by MDC and Malawi, is unclear.

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 2

Byrnes ◆ Keller ◆ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

York Fidelity Ltd (a Singapore based company) that was owned by Greg Kennedy, who eventually assumed full control over the Mine as Chief Executive of Mineral Exploration. AG Decl. ¶30.

Mineral Exploration's mining license was a 10-year license that expired in 2004 and was only renewed for an additional two years. AG Decl. ¶33. This extension allowed Malawi to refocus its efforts to increase local participation in the Mine. *Id.* During the two-year extension granted to Mineral Exploration, the Applicant issued a notice inviting locals to participate in the Mine's operations. AG Decl. ¶34. Despite Mineral Exploration's efforts to extend its license with the Mine for an additional 10 years, on September 13, 2006, the license expired and Malawi did not renew its license. AG Decl. ¶35. The Applicant did not approve of Mineral Exploration's request for an extension because it did not satisfy the Applicant's local participation requirements. *Id.*

On February 17, 2006, Nyala Mines Ltd. was incorporated under Malawi registration number 7759.[3]  AG Decl. ¶36. Unbeknownst to the Applicant, the owners, directors, and executives of Nyala Mines were the same owners, directors, and executives of Mineral Exploration. AG Decl. ¶38. For example, York Fidelity (which, as discussed above, owned 95% of Mineral Exploration) owned 4,999,999 of 5,000,000 shares in Nyala Mines. AG Decl. ¶39. Further, the Chief Executive of Mineral Exploration, Mr. Greg Kennedy, was listed as a Director of Nyala Mines. AG Decl. ¶40.   And Hilton Cook was the Mine Manager under Nyala Mines as well as Mineral Exploration. *Id.* By June 2007, Nyala Mines bought out Mineral Exploration apparently to maintain the integrity of the Mine and its security. AG Decl. ¶41. Thereafter, Nyala Mines applied and on October 2, 2007, was granted a 10-year license to mine rubies and sapphires at Chimwadzulu (the "**License**"). AG Decl. ¶¶37, 47, Ex. 24.

On November 30, 2010, Malawian national Abdul Mahomed and Lawrence Hood of South Africa purchased a 40% interest in Nyala Mines from York Fidelity Ltd. AG Decl. ¶42. On March 12, 2013, Abdul Mahomed purchased an additional 40% of Nyala Mines from York Fidelity Ltd.

---

[3] As set forth in AG Decl. ¶36, Nyala Mines Limited may also be registered under Malawi Company Registration No. 7976. This discrepancy is being investigated.

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

AG Decl. ¶43. On September 29, 2017, the Mining and Minerals Regulatory Authority received Nyala Mines' late application for the renewal of the License; however, Nyala Mines's application was denied. AG Decl. ¶45. In November 2017, Mwalawanga Mining Limited was granted a 10-year mining license for the Mine. AG Decl. ¶46. In response, Nyala Mines filed suit against the Applicant seeking injunctive relief. *Id.* In February 2018, the High Court of Malawi denied Nyala Mines' application; however, Nyala Mines continued to operate the Mine illegally (after its license had expired) until November 2021. *Id.* When Nyala Mines finally vacated the Mine, it removed all of its plant and machine infrastructure and demolished any structures previously built. *Id.*

**B.    Columbia Gem Assisted Nyala Mines Obtain the License.**

Columbia Gem is a supplier and wholesaler of exotic gemstones, including rubies and sapphires originating from the Mine, with its principal office address at 12507 NE 95TH Street, Vancouver, Washington, 98682. AG Decl. ¶11. Beginning in 2004, Columbia Gem had an exclusive polishing, cutting, and marketing agreement with Mineral Exploration, and then actively assisted Nyala Mines to pitch and secure the License. AG Decl. ¶¶60, 69. On November 22, 2006, Columbia Gem's President, Eric Braunwart, wrote to Nyala Mines Director David Hedderwick (also formerly of Mineral Exploration) that Columbia Gem was excited about Nyala's license application, Columbia Gem would market the community development projects listed in Nyala's license application on Columbia Gem's exclusive www.nyalaruby.com website, and that Columbia Gem would "be happy to track the sales and figure the 2 ½ %[sic] commission payable to the Malawi government [and Columbia Gem] would do the accounting every quarter then wire the funds to the authorized Malawi government account." AG Decl. ¶70, Ex. 37. According to Nyala Mines' Director David Hedderwick, the 2.5% Sales Royalty, *infra*, was extremely novel and innovative. AG Decl. ¶71.

On November 17, 2008, Columbia Gem published a report entitled "Nyala Ruby Sales in the U.S. and Worldwide" that represented that the rubies from the Mine are the only all natural (*i.e.*, not heat treated) rubies that can be fully tracked from mine to market, which increases the

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 4

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

marketability and value of the rubies. AG Decl. ¶75(a). Columbia Gem also reported that due to a U.S. ban on rubies from Burma there was an increased demand for rubies within the market as whole, and that major jewelers like Tiffany's and Sterlings were ready and willing to engage with Columbia Gem to meet their respective high volume demands for high quality rubies. AG Decl. ¶75(b)-(c).

Also, Nyala Mines' application for the License stated that Nyala Mines had an exclusive agreement with Columbia Gem, whereby "Nyala [Mines] will ship all [gemstones] produced at Chimwadzulu direct to Col[u]mbia [sic] who will sort, cut and market all finished product." AG Decl. ¶76, Ex. 38. Once the License was secured, Columbia Gem split the net wholesale proceeds 50/50 with Nyala Mines. AG Decl. ¶78.

**C.    Nyala Mines License for the Exclusive Rights Over the Mine.**

As noted above, on October 2, 2007, the Applicant granted Nyala Mines a 10-year license which granted the exclusive right to mine and process rubies and sapphires from the Mine. AG Decl. ¶¶37, 47, Ex. 24. According to Paragraph 2 of the License, Nyala Mines was required to pay the Applicant royalties and taxes pursuant to regulation 8(1) (C) of the Mines and Minerals (Mineral Rights) Regulations 1981. AG Decl. ¶48. Notably, the License was conditional upon Nyala Mines entering into a Mining (Royalty) Agreement with the Applicant. AG Decl. ¶49. The License, however, provided for the following: (a) that Nyala Mines had operational reporting obligations to Malawi each year; (b) Nyala Mines was required to employ and train Malawian citizens; (c) Nyala Mines was required to purchase goods and services locally, and to prioritize using local resources instead of importing the same; and, (d) Nyala Mines was required to report "to the Director of Mines within 10 days of the end of each month a return showing the quantity of ore produced during that month and quantity of ore sold and its value." AG Decl. ¶50.

Also on October 2, 2007, Nyala Mines and Malawi's Ministry of Energy and Mines executed a Memorandum of Understanding ("**MOU**") related to the License, which required local Malawians to have the right and ability "to acquire up to 30% of the issued share capital in Nyala,

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 5

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

effective from the date" the License was issued. AG Decl. ¶¶51-52, Ex. 26.

**D.    The Royalty Agreement Executed by Nyala Mines and Malawi.**

On June 18, 2008, Nyala Mines and the Applicant (acting through its Ministry of Energy and Mines) executed a Royalty Agreement ("**Royalty Agreement**"), which required Nyala Mines to pay Malawi certain royalties for the export and wholesale of gemstones produced at the Mine during the term of the License. AG Decl. ¶54, Ex. 27. Specifically, the Royalty Agreement provides that Nyala Mines shall: (a) pay Malawi a 10 percent royalty on the "gross value" of the gemstones exported out of Malawi ("**Royalty**"); (b) pay Malawi 2.5 percent of the "wholesale price" of Nyala Mines's share of any cut and polished gemstones sold by Columbia Gem which shall be paid on a quarterly basis and calculated based on Columbia Gem's sales from the preceding quarter ("**Sales Royalty**"); and, (c) issue the Applicant a 10 percent equity stake in Nyala based on a $20 million valuation of Nyala. AG Decl. ¶57(a)-(d). In exchange, Malawi agreed to timely provide Nyala Mines with an import license and any other licenses and permits it required, and that Nyala Mines would be exempt from certain taxes. AG Decl. ¶58.

**E.    Unknown Quantities of Gemstones Were Mined, Exported, and Sold From Chimwadzulu.**

Despite the reporting obligations imposed on Nyala Mines and its predecessor Mineral Exploration, for nearly 26 years both companies failed to report, or accurately report, quantities of gemstones mined from Chimwadzulu and exported and sold to global markets. AG Decl. ¶80. Accordingly, Malawi has been unable to quantify the amount of unpaid taxes and royalties owed by each company. *Id.*

Malawi's Department of Mines, which is required to approve any export licenses, only has records of **seven** approvals for Nyala Mines to export gemstones from the Mine. AG Decl. ¶83, Ex. 40. In totality, Nyala Mines purportedly claimed 62,175,000 Malawian Kwacha (~$35,856) in gemstones exported. *Id.* As a result, according to the Department of Mines, Nyala Mines only paid about 6,217,500 Malawian Kwacha (~$3,586) in export royalties according to the Royalty

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 6

Agreement. *Id.* However, based on its own records, the Reserve Bank of Malawi calculated that during the life of the License, Nyala Mines only reported approximately 60,000 Malawian Kwacha (~$35.00) in sales while simultaneously reporting nearly 1,274,106 Malawian Kwacha (~$735.00) in expenses. AG Decl. ¶84. Moreover, from December 2007 to March 2017, the Department of Mines received monthly operational reports from Nyala Mines, where Nyala Mines reported that for more than 50% of the months it was operational it did not mine a single gram of ruby or sapphire corundum/gemstone (of any quality or grade). AG Decl. ¶85, Ex. 41. Interestingly, however, during Nyala Mines' operation of the Mine, it routinely used large vehicles and machines to excavate, transport, and sort large quantities of earth and gemstones. AG Decl. ¶88, Ex. 44; Bonanno Decl. ¶4, Ex. 1.

Notwithstanding Nyala Mines's reporting nearly no production for the 2015 and 2016 calendar years, for that same period of time ***Nyala Mines reported to Malawi's Extractive Industries Transparency Initiative (MWEITI) that it had produced 400 tons (approximately 400,000kg[4]) of ruby and sapphire corundum***. AG Decl. ¶87, Ex. 43. The United States Department of Interior ***estimates*** that Nyala Mines exported approximately 300kg of sapphires and 150kg of Nyala Rubies each year from 2007 to 2017. AG Decl. ¶¶61(b), 90, Based solely on the USGS Yearbooks' estimates, Nyala Mines and Columbia Gem potentially owe billions of dollars in export and sales royalties to Malawi. AG Decl. ¶91, Ex. 28. However, these are mere estimates; the documents possessed by Columbia Gem may shed light on the actual figures. *Id.*

## F.    <u>Columbia Gem's Possession of Highly Relevant and Material Evidence.</u>

It is unclear whether Columbia Gem is (or was at one point) the parent company to Nyala Mines f/k/a Mineral Exploration, or if Columbia Gem solely holds a contractual right to be the exclusive seller of gemstones originating from the Mine. AG Decl. ¶¶60-62.  According to Columbia Gem's website, it has an ***exclusive*** agreement with Nyala Mines for the rights to all Nyala Rubies and sapphires originating from the Mine. AG Decl. ¶79. However, the United States

---

[4] There can be up to 5,000 carats per kilogram.

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1    Department of Interior's U.S. Geological Survey lists Nyala Mines as a subsidiary of Columbia

2    Gem. AG Decl. ¶61(b), Ex. 28.

3        Regardless of whether Columbia Gem had an ownership interest in Nyala Mines, Columbia

4    Gem held the exclusive right to sell and distribute the gemstones originating from the Mine. AG

5    Decl. ¶¶60, 69. Columbia Gem also holds a trademark on the mark "Nyala Ruby." AG Decl. ¶63,

6    Ex. 30. On December 10, 2003, Columbia Gem applied for a trademark for "Nyala Ruby." *Id.* On

7    December 14, 2004, Columbia Gem was granted the trademark for "Nyala Ruby" (bearing US

8    Serial Number: 78338843) and still holds the trademark as of the date of this filing. *Id.* After

9    gemstones from Chimwadzulu are mined they are exported from Malawi and are imported by

10   Columbia Gem to its principal office in Vancouver, Washington to be sorted into quality categories

11   before being sold. AG Decl. ¶64.

12       Columbia Gem uses its trademark to market and sell to some of the world's most well-

13   known jewelers, including Tiffany's and Helzburg Diamond Group. AG Decl. ¶75(c). For

14   instance, Trigem Designs, a Columbia Gem subsidiary, represented that Nyala rubies and

15   sapphires would sell for $500-$12,000 per carat, and some warranting considerably more. AG

16   Decl. ¶65. According to Columbia Gem, since rubies from the Mine ***do not need to be heat treated,***

17   ***a quality that is unique to Nyala Rubies***, some warrant a price of $20,000 to $25,000 per carat,

18   with the best being sold for as much as $50,000 per carat. AG Decl. ¶66, Ex. 32.

19       Gemstones mined by Nyala Mines from Chimwadzulu were marketed and sold to the world

20   by Columbia Gem. AG Decl. ¶67. In fact, gemstones mined by Nyala Mines from Chimwadzulu

21   are likely still being sold by Columbia Gem under the titles "African Ruby" or "African Sapphire"

22   or another similar moniker. As of March 2025, Columbia Gem was advertising on its website

23   multiple rubies and sapphires, which originated from Africa that did not require heat treatments,

24   for thousands of dollars. AG Decl. ¶68.

25

26

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 8

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**G.    History of Corruption in Malawi.**

Malawi has long suffered from deep rooted corruption in government and the mining industry. Since becoming Attorney General, Thabo Chakaka-Nyirenda has made it his mission to uncover and prevent corruption in Malawi. AG Decl. ¶¶17, 96.

In relevant part, the history of corruption at the Mine and in Malawi is as old as the Mine itself. Knowledge of the ruby and sapphire deposits on Chimwadzulu Hill pre-dates the British colonization of Malawi in 1891. AG Decl. ¶16. Local chiefs would mine small quantities of gemstones to showcase their own wealth and power. *Id.* During Britain's colonization of Malawi from 1891 to 1964, mechanized mining was introduced at the Mine and simultaneously kicked off Chimwadzulu's tortured history of corruption, illegal mining, and smuggling. AG Decl. ¶17. Historically, it was reported that British miners would smuggle gemstones out of Malawi by hiding the gemstones within engine blocks that were being shipped to Europe for repair. *Id.*

More recently, despite multiple governmental officials identifying numerous discrepancies and concerns surrounding Nyala Mines, through concealment or the assistance from corrupt government officials, the concerns were buried. AG Decl. ¶¶93-95. For instance, as early as 2004, the Department of Mines expressed doubts about the legitimacy and accuracy of Mineral Exploration's mining and export reports. AG Decl. ¶81. In particular, there were concerns about Mineral Exploration only declaring clear and pink corundum instead of rubies, which the Mine has historically produced, the value of the stones reported appeared to be greatly deflated, and for 9 years Mineral Exploration only reported having operated at a loss, which was unexplainable. *Id.* Similarly, when Nyala Mines filed its late application in 2017 to renew the License, the Minister of Natural Resources, Energy and Mining denied the application and explained doing so based on Nyala Mines reporting "the indicated annual operating costs of the mine have always superseded the declared annual gross sales (returns), meaning that the mine has continuously been operating at a loss for over 10 years…." AG Decl. ¶82, Ex. 22. Indeed, in October 2018, after Nyala Mines's application to renew its license was denied, the Reserve Bank of Malawi wrote the Principal

Secretary for the Ministry of Natural Resources, Energy and Mining that Nyala Mines had underreported gemstone exports and therefore, had failed to pay the required amount of taxes and royalties to Malawi. AG Decl. ¶86.

Notwithstanding the aforementioned concerns identified within various departments of the Applicant's government, it is clear that Nyala Mines directly, or through the assistance of others, was actively concealing the quantities and quality of gemstones it extracted, exported, and sold from Mine. AG Decl. ¶89. As a result, Malawi is unable to accurately quantify how much it is owed in royalties from Nyala Mines. AG Decl. ¶80, 89.

## H.    Malawi's Criminal Investigation.

In cooperation with the Attorney General's office, Malawi's Anti-Corruption Bureau ("**ACB**") has opened an investigation into Nyala Mines and its underreporting and underpayment of taxes and royalties. AG Decl. ¶92. In particular, the ACB and the Attorney General's office are actively investigating the persons and entities that may have assisted Nyala Mines in underreporting its production, exports, and sales. AG Decl. ¶93. Among those being investigated are numerous Malawi government employees, officials, and ministers within the Department of Mines, the Malawi Revenue Authority, Malawi's Customs Authority, and Malawi's Department of Geological Surveys. *Id.* The targets of the investigation are suspected of actively concealing, delaying, or preventing Malawi from discovering Nyala Mines underreporting of its production, exports, and sales, or aiding and abetting the foregoing misconduct. *Id.* The targets of the investigation are also suspected of taking bribes or receiving undisclosed compensation to further hide and conceal Nyala Mines's criminal activity. AG Decl. ¶95.

## I.    The Contemplated Criminal and Civil Proceedings.

As a result of the ACB and Malawi Attorney General's investigation, Nyala Mines and its co-conspirators are being investigated for, *inter alia*, making false declarations, altering their financial statements and official corporate records, and falsifying their accounts. AG Decl. ¶97. Specifically, Nyala Mines and its co-conspirators may be charged with criminal violations of the

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Taxation Act Cap 41:01 of the Laws of Malawi ("**Taxation Act**"), the Penal Code Cap 7:01 of the Laws of Malawi ("**Penal Code**"), and the Companies Act No. 15 of 2013 ("**Companies Act**"). *Id.*

As a result of violations under the Taxation Act, the Penal Code, and/or the Companies Act, any natural or legal persons (*i.e.*, companies or their officers) may be held criminally liable and can face fines and imprisonment. AG Decl. ¶¶97, 100-103. Each violation under the Taxation Act is not subject to any statute of limitations or the Limitation Act of the Laws of Malawi, and each violation can result in prison sentences or fines. AG Decl. ¶101. Upon completion of the Attorney General's and/or the ACB's investigation, Nyala Mines and any of its co-conspirators may be criminally charged under any of the statutory provisions of the Taxation Act, the Penal Code, and/or the Companies Act and criminally prosecuted to the fullest extent under the Laws of Malawi. AG Decl. ¶104.

Malawi seeks the assistance of this Court to obtain evidence related to Nyala Mines's export of gemstones from the Mine to its exclusive partner (or parent company) Columbia Gem. AG Decl. ¶112. The purpose for which the Applicant seeks this discovery from Columbia Gem is to obtain evidence that will assist it to fully and fairly prosecute criminal claims of tax evasion and money laundering under the Taxation Act, the Penal Code, and/or the Companies Act against Nyala Mines (to the fullest extent permitted under the laws of Malawi), and/or any other party that assisted Nyala Mines in carrying out its criminal enterprise. AG Decl. ¶117. Specifically, the Applicant seeks discovery from Columbia Gem to assist it in: (1) identifying all responsible parties to be charged criminally; (2) identifying all criminal charges to be brought against each potential criminal defendant; (3) identifying and quantifying the full extent of economic damages sustained by the Applicant; (4) identifying all key witnesses and evidence to support the prosecution of all criminal charges brought against each potential criminal defendant; (5) calculating the appropriate restitution for all funds owed to Malawi; and, (6) seeking justice for any financial crimes committed related to the Mine. *Id.* Malawi also seeks this discovery from Columbia Gem to obtain evidence that would assist it in bringing civil claims (*e.g.*, breach of contract, unjust enrichment,

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

and/or conversion) against Nyala Mines and any other party that assisted Nyala Mines breach of the Royalty Agreement. AG Decl. ¶118.

## III.    ARGUMENT

The Court should grant this *ex parte* Application because Malawi satisfies the statutory requirements, all of the discretionary factors set forth in *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004) weigh in favor of granting the Application, and *ex parte* relief is justified.

An applicant seeking discovery for use in a foreign proceeding must demonstrate that (1) the person from whom the discovery is sought resides or is found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or any interested person. 28 U.S.C. § 1782; *In re Sailed Tech. (Beijing) Co., Ltd.*, 2023 WL 3568151, at *3 (W.D. Wash. May 18, 2023) (restating the statutory elements for a 1782 petition). "Additionally, even where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion" to grant the application. *Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th Cir. 2019).

In exercising its discretion under 28 U.S.C. § 1782, a district court should consider the following non-exhaustive factors: "(1) [whether] the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the [discovery] request [is] an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States; and (4) [whether the discovery requested is] unduly intrusive or burdensome." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004).

## A.    The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782.

This Application should be granted because the Applicant is able to establish all of the § 1782 statutory elements. *First*, Respondent is found in this District as Columbia Gem maintains a

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

principal office address of 12507 NE 95th Street, Vancouver, Washington, 98682. AG Decl. ¶11;
*see Matter of Lufthansa Technick AG*, 2019 WL 331839, at *1 (W.D. Wash. Jan. 25, 2019) (an
entity's "main office" or principal location is sufficient to satisfy the "found in this District"
element of § 1782). Upon information and belief, the documents, evidence, and testimony the
Applicant seeks are either located in this District, or within Respondent's possession, custody, or
control, as those terms are defined in Federal Rule Civil Procedure 34.

Here, because Respondent conducts business in this District, has sufficient contacts in this
District, and/or is physically located in this District, the Court should find that Respondent resides
or is found in this District. Further, the records Applicant seeks were generated or maintained by
Respondent in its ordinary course of business and would be expected to be held by or easily
accessible to Respondent where it conducts such business. AG Decl. ¶¶10, 11; Bonanno Decl. ¶5.
Accordingly, Respondent should be able to locate and produce these records in this District.

*Second*, the discovery sought is for the Applicant's use in reasonably contemplated foreign
civil and criminal proceedings before a court in Malawi. AG Decl. ¶¶96-111. The "for use"
requirement is met where the applicant is, or will be, a party to a foreign proceeding or
investigation with procedural rights to submit evidence, without regard as to whether the evidence
will ultimately be admissible in the foreign tribunal. *See In re Request For Jud. Assistance from
Seoul Dist. Crim. Ct., Seoul, Korea.*, 555 F.2d 720, 723 (9th Cir. 1977) (finding that district courts
in assessing § 1782 requests should not "involve themselves in technical questions of foreign law
relating" to admissibility of evidence before the foreign court); *In re Accent Delight Int'l Ltd.*, 869
F.3d 121, 132 (2d Cir. 2017) (finding the "for use" statutory requirement was met where the
applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to
submit the requested documents to the magistrate overseeing the investigation"); *In re McKillen*,
2024 WL 3679548, at *3 (C.D. Cal. July 30, 2024) (also finding that for a district court to assess
the "for-use in a foreign proceeding" requirement, the court should focus on "the practical ability
of an applicant to place a beneficial document – or the information it contains – before a foreign

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

tribunal." (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131)). Importantly, "[§] 1782 provides, in relevant part, that [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, ***including criminal investigations conducted before formal accusation.***" *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013) (quoting 28 U.S.C. § 1782(a)); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1032 (N.D. Cal. 2016) (same).

Malawi, as the victim of the potential crimes that are being investigated, is an interested party to the Applicant's pending criminal investigation. AG Decl. ¶¶96-105. Further, under Malawian law, the Applicant has the right to submit evidence. More importantly, the Malawian criminal investigation qualifies as a "foreign proceeding" under § 1782. 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 258 (holding that proceedings that have not "progressed beyond the investigative stage" can qualify for discovery under Section 1782); *Advanced Micro Devices, Inc. v Intel Corp.*, 292 F.3d 664, 667 (9th Cir. 2002) (noting that § 1782 discovery is "broad and inclusive" and the for-use requirement is met for criminal investigations); *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 152-57 (2d Cir. 2022) (allowing discovery in aid of a criminal investigation in Nigeria).

Indeed, the foreign proceeding need not actually be underway before 28 U.S.C. § 1782 may be invoked. It is sufficient that such proceedings are "likely to occur" or are "within reasonable contemplation." *Intel*, 542 U.S. at 258-259 (quoting *In re Letter Request From Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989)). Here, the Applicant intends to bring criminal charges under the Taxation Act, the Penal Code, and/or the Companies Act, and any other applicable financial crime against Nyala Mines or any other responsible party. AG Decl. ¶¶9, 97. The criminal charges contemplated would not violate any statute of limitations and would be ripe for prosecution. AG Decl. ¶110. The Applicant also intends to bring a civil action against Nyala Mines (and any other responsible party) for breach of contract, unjust

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

enrichment, and conversion. AG Decl. ¶¶9, 106. Under Malawian law, the Applicant's claims for breach of contract and conversion are not subject to any statute of limitations. AG Decl. ¶110. Any criminal charges or civil action would be initiated before a High Court of Malawi – a court that is exercising its own governmental authority. AG Decl. ¶¶105, 111.

*Third*, the Applicant is an "interested" party authorized to bring this Application. Indeed, the Applicant is the Government of Malawi that seeks justice through legitimate criminal prosecution and civil claims brought before a High Court of Malawi. *See Intel*, 542 U.S. at 256 (broadly construing the "interested person" requirement such that litigants and non-litigants may satisfy this statutory requirement, including foreign sovereigns); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) ("An interested person seeking to invoke the discovery mechanism set forth under § 1782 may include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining judicial assistance."); *Matter of Govt. of Mongolia v Itera Intl. Energy, L.L.C.*, 2009 WL 10712603, at *9 (M.D. Fla. Nov. 10, 2009) (finding that the Government of Mongolia was an interested party); *In re Attorney Gen. of Quebec for Jud. Assistance Pursuant to 28 U.S.C. § 1782*, 2021 WL 5231630, at *1 (S.D. Fla. Nov. 10, 2021) (finding that the Attorney General of Quebec's petition satisfied the "interested person" requirement as the discovery sought was to support litigations pending in Quebec); *Republic of Ecuador v. Stratus Consulting, Inc.*, 2013 WL 2352425, at *2 (D. Colo. May 29, 2013) (finding that the "Republic of Ecuador is an interested person" in the foreign proceeding); *Ecuador, In re Republic of*, 2011 WL 4434816, at *2 (N.D. Cal. Sept. 23, 2011) (same); *In re Republic of Ecuador*, 2011 WL 4089189, at *2 (E.D. Cal. Sept. 13, 2011) (same). Since the Applicant would be a party to both the contemplated criminal prosecution and civil action, and as such would have the ability and authority to submit evidence to the High Court for consideration, the Applicant satisfies the "interested" party element.

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

**B.**     **The *Intel* Factors Weigh in Favor of Granting the Application.**

2

The Court should also grant the Application because all of the *Intel* factors support

3 Malawi's application. In exercising its discretion under 28 U.S.C. § 1782, a district court should

4 consider the following non-exhaustive factors: "(1) [whether] the person from whom discovery is

5 sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character

6 of the proceedings underway abroad, and the receptivity of the foreign government or the court or

7 agency abroad to U.S. federal-court judicial assistance; (3) whether the [discovery] request [is] an

8 attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the

9 United States; and (4) [whether the discovery requested is] unduly intrusive or burdensome." *Intel*

10 *Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004).

11

Here, all of these factors weigh in favor of granting this Application.

12

*First*, the Court should exercise its discretion and grant this Application because the first

13 *Intel* factor – whether the person or entity from whom discovery is sought is a participant in the

14 foreign proceeding – weighs unequivocally in Applicant's favor. Where a respondent in a § 1782

15 application is a participant in a foreign proceeding, "the need for § 1782(a) aid generally is not as

16 apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising

17 abroad." *Intel*, 542 U.S. at 244. Notably though, where a respondent in a § 1782 application is a

18 *non-participant* in the foreign proceeding, the need for a § 1782 discovery order increases because

19 the respondent is not under the control of the foreign court. *Id.*; *see also In re Application for*

20 *Appointment of a Commr. re Req. for Jud. Assistance for the Issuance of Subp. Pursuant to 28*

21 *U.S.C. § 1782*, 2011 WL 2747302 (N.D. Cal. July 13, 2011) (noting that discovery targets' status

22 as nonparties in the Spanish Labor Proceedings weighed in favor of granting § 1782 application).

23 Moreover, even when a non-participant respondent is located within the jurisdiction of the foreign

24 tribunal, the Courts of Appeals have rejected the argument that a § 1782 applicant is required to

25 exhaust its discovery options afforded to it in the foreign jurisdiction or by the foreign tribunal

26 before it can seek § 1782 discovery. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 16

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

183944, at *3 (N.D. Cal. Jan. 17, 2013) (rejecting the notion that § 1782 discovery requires an applicant to exhaust the discovery attempts abroad as a condition (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995)); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 134 ("Section 1782 does not require applicants first to seek discovery in the foreign tribunal before applying in this country."); *In re PJSC Uralkali for an Order Pursuant to 28 U.S.C. § 1782*, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) (finding that even though the applicant had not attempted to obtain the discovery from the foreign tribunal prior to filing the § 1782 petition, it had "no bearing on the court's assessment of the first *Intel* factor"); *In re Digitechnic*, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) (acknowledging that there is no exhaustion requirement in § 1782). Here, discovery is sought from a Respondent that is not expected to be a participant in the contemplated criminal proceedings in Malawi. AG Decl. ¶¶96-105.

*Second*, the Court should exercise its discretion and grant this Application because the second *Intel* factor – the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal court assistance – also weighs in the Applicant's favor. The receptivity of the foreign court must be examined in light of one of the primary goals of Section 1782 – to encourage foreign courts to provide similar assistance to U.S. courts. *Lufthansa Technik v. Panasonic Avionics Corp.*, 2017 WL 6311356, at *3 (W.D. Wash. Dec. 11, 2017) (citing *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011)). Additionally, in evaluating the nature of the tribunal and character of the proceedings, courts have focused on the utility of the evidence sought. *Id.* (citing *Qualcomm Inc.*, 162 F. Supp. 3d at 1040).

Here, the information sought is highly relevant to establishing both criminal and civil liability and identifying parties that may be liable for the same. Moreover, a High Court in Malawi would likely accept the evidence obtained from this Application in both a criminal and civil proceeding. AG Decl. ¶¶105, 111. Malawian law does not have any procedural bars on the submission or use of evidence obtained though foreign discovery proceedings as long as it is relevant to the domestic case. *Id.* In fact, the Applicant seeks ordinary business records that were

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

created or maintained by the Respondent in its ordinary course of business. Therefore, these records should be admissible.

*Third*, the Applicant is not attempting to circumvent Malawi's discovery limits as there is nothing under Malawian law that precludes parties from obtaining evidence abroad, and the discovery requested is narrowly tailored to access probative evidence that is critical to Applicant's contemplated criminal and civil actions in Malawi. AG Decl. ¶¶112-119. Furthermore, a district court may not refuse a § 1782 discovery request just because a foreign tribunal has not yet had the opportunity to consider discovery or rule on the admissibility of evidence that might be generated from Section 1782 discovery. *Intel*, 542 U.S. at 261 (noting that the text of § 1782 does not contain any generally applicable foreign-discoverability rule).

*Fourth*, the Court should exercise its discretion and grant this Application because the final *Intel* factor – the intrusiveness and burden of the application – weighs in Applicant's favor. There is nothing intrusive or burdensome about the Applicant's request for records and testimony that were generated in Respondent's ordinary course of business. These records should be easily accessible to Respondent.

As shown in the proposed subpoenas to Respondent, the discovery requested by the Applicant is narrowly tailored and limited to documents and testimony related to Respondent's business contacts and activities with Nyala Mines and the importation by Respondent of gemstones originating from the Mine. AG Decl. ¶¶112-119; Bonanno Decl. ¶¶5-7, Ex. 2-4. The information sought by the subpoenas is modest in scope, targeted, and tightly restricted to the needs of the contemplated criminal and civil proceedings before the High Court of Malawi for which it is sought. It is readily accessible to Respondent, and can be readily gathered, produced, and protected. As such, the fourth *Intel* factor favors the Applicant.

*Finally*, Applicant believes that the subpoenas are narrow and appropriate in their entirety. However, in the event this Court has concerns about the scope or breadth of any of the requests, Applicant respectfully requests that the Court modify or remove—or allow Applicant to modify

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 - 18

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

or remove—any requests and grant the Application as to the subpoenas, so that discovery can be obtained as expeditiously as possible. The Court has this power. *See Intel,* 542 U.S. at 265 (a district court can trim "unduly intrusive or burdensome requests"); *In re Anahara*, 2022 WL 783896, at *4 (N.D. Cal. Mar. 15, 2022) (granting § 1782 application but specifying limitations to subpoena requests considered "overly broad"); *In re Team Co., Ltd.*, 2022 WL 4099219, at *5 (N.D. Cal. Sept. 7, 2022) (granting application but modifying requests seeking "all documents showing" to require only "documents sufficient to show" certain information).

## C.    *Ex Parte* Relief Is Proper and Justified.

Section 1782 authorizes district courts to order discovery for use in foreign proceedings. *See* 28 U.S.C. § 1782(a). An *ex parte* application is the "common," appropriate vehicle for seeking this discovery. Under § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." Courts ordinarily issue subpoenas pursuant to Section 1782 applications on an *ex parte* basis. *See, e.g., In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (finding grant of a § 1782 subpoena request on an *ex parte* basis proper); *In re Marano*, 2009 WL 482649, *2 (N.D. Cal. Feb. 25, 2009) (same). "[S]uch *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Ltr. of Req. from Supreme Ct. of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991); *see also In re Jin*, 2023 WL 6240525, at *1 (W.D. Wash. Sept. 25, 2023) (granting an applicant's *ex parte* § 1782 application); *IPCom GMBH & Co. KG v Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file ex parte applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it."). If the Application is granted, Applicant will serve the subpoenas promptly, at which point Columbia Gem will have ample opportunity to object.

Accordingly, the Applicant respectfully requests that the Court grant the Application on an *ex parte* basis.

### IV.     <u>CONCLUSION</u>

For all the reasons set forth herein, the Application should be granted.

Dated this 11th day of April, 2025.

BYRNES KELLER CROMWELL LLP


By /s/ Keith D. Petrak
    Keith D. Petrak, WSBA #19159
    1000 Second Avenue, 38th Floor
    Seattle, Washington 98104
    206-622-2000
    206-622-2522
    kpetrak@byrneskeller.com

SEIDEN LAW LLP
Amiad Kushner
(*pro hac vice* application to be filed)
MarcAnthony Bonanno
(*pro hac vice* application to be filed)
322 Eighth Avenue, Suite 1200
New York, NY 10001
akushner@seidenlaw.com
mbonanno@seidenlaw.com

***Counsel for Applicant The Republic of Malawi***

*EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28
U.S.C. § 1782 - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000